## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

**ALEXY AGUSTO ROSA,**

     **Petitioner,**

**-vs-**                **Case No.  A-10-CA-124-SS**

**RICK THALER,**

     **Respondent.**

_____

### <u>O R D E R</u>

  BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Petitioner Alexy Agusto Rosa ("Rosa")'s Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 [#1], and Rosa's supporting memorandum of law [#2]; Respondent Rick Thaler ("Thaler")'s Motion to Dismiss [#9], and Rosa's various responses [#10, 11, 13] thereto; Thaler's Response [#14] and Rosa's various responses [#17, 18, 19] thereto; the Report and Recommendation of United States Magistrate Judge Robert Pitman ("R&R") [#20], Rosa's [#22] and Thaler's [#23] objections thereto, and Rosa's various other responses [#24, 25, 27, 28].   Having reviewed this daunting stack of motions, the relevant case law, and the file as a whole, the Court now enters the following opinion and orders ACCEPTING as modified the recommendation of the Magistrate Judge, DISMISSING Rosa's petition, and alternatively DENYING Rosa's petition.

### Background

  Rosa argues he is entitled to habeas corpus relief because the Texas Board of Pardons and Paroles (the "Board") violated his due process and equal protection rights by deciding not to release him on mandatory supervision.   The Board violated his rights, Rosa argues, by: (1) relying on

unadjudicated offenses which Rosa claims were secretly added to his file; (2) employing arbitrary and capricious evaluation methods; and (3) not allowing Rosa to examine the contents of his file or otherwise challenge erroneous information contained therein.  For the following reasons, the Court disagrees with Rosa, accepts as modified the recommendation of the Magistrate Judge, DISMISSES Rosa's petition for writ of habeas corpus, and alternatively DENIES Rosa's petition for writ of habeas corpus.

## I.      Procedural Background

Rosa was charged in a two count indictment with capital murder and engaging in organized criminal activity (aggravated assault) in the 22nd Judicial District Court, Hays County, Texas.  On March 17, 2004, pursuant to a plea agreement, Rosa pled guilty to engaging in organized criminal activity (aggravated assault) and was sentenced to twelve years imprisonment.  Rosa filed no direct appeal.

Rosa does not challenge the voluntariness of his plea, or the validity of his conviction and sentence.  Rather, Rosa complains the Board on four occasions—November 8, 2006; October 10, 2007; September 16, 2008; and September 4, 2009—denied him release to mandatory supervision.[1]

---

[1] "Mandatory supervision" stands in contrast to "parole" in the Texas prison system.  Both allow the early release of an eligible inmate from prison, with the inmate serving the remainder of his or her sentence under the supervision of the Pardons and Paroles Division.  *See* TEX. GOV'T CODE ANN. §§ 508.001(5), (6).  However, whereas parole entails the "discretionary and conditional release" of an eligible inmate, *id.* at § 508.001(6), release to mandatory supervision is generally, as the name implies, mandatory: "Except as provided by Section 508.149, a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." *Id.* at § 508.147(a).

Although section 508.149 contains many exceptions, the one most relevant to Rosa's petition states an inmate may not be released to mandatory supervision if a parole panel determines "the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation," and "the inmate's release would endanger the public." *Id.* at § 508.149(b).

Because he believed those denials violated his due process and equal protection rights, Rosa executed on February 16, 2010 a petition for writ of habeas corpus under 28 U.S.C. § 2254.[2]

On April 15, 2010, Thaler filed a motion to dismiss Rosa's petition because Rosa had failed to exhaust his state remedies, as required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[3]  Notwithstanding Thaler's exhaustion arguments, the Magistrate Judge ordered him to file a response addressing the merits of Rosa's claim.[4]  On May 14, 2010, Thaler did so, reasserting his exhaustion argument and further arguing: (1) Rosa's claims were time-barred; (2) Rosa was afforded all the process he was due regarding the Board's denials; and (3) Rosa's equal protection claim was conclusory.  Rosa filed various replies attacking Thaler's response.

On June 8, 2010, United States Magistrate Judge Robert Pitman issued his report and recommendation, in which he recommended denial of Rosa's application.  R&R at 13.  The Magistrate Judge declined to resolve the exhaustion of state remedies issue, instead recommending denial on the merits of Rosa's claims.  *Id.* at 6.  Specifically, the Magistrate Judge found: (1) Rosa's attacks on the Board's 2006, 2007, and 2008 decisions were time-barred, *id.* at 6–8; (2) although

---

[2] In part, that section states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[3] The statute states an application for writ of habeas corpus shall not be granted unless it appears: (1) the applicant has exhausted the remedies available in the courts of the State; or (2) there is either no available State corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  28 U.S.C. § 2254(b)(1).

[4] The AEDPA provides: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

Rosa had a liberty interest in release to mandatory supervision, he was provided both notice and a meaningful opportunity to be heard, and therefore the Board did not violate his right to due process, *id.* at 9–13; and (3) Rosa's equal protection allegations were conclusory, *id.* at 13.

Neither party was pleased with the Magistrate Judge's report, and both filed objections: Thaler on June 22, 2010; and Rosa on June 21, 2010, June 28, 2010, July 15, 2010, December 1, 2010, and December 27, 2010.[5]  Both parties are entitled to de novo review of the portions of the Magistrate Judge's report to which they filed written objections within fourteen days of the report's issuance.  28 U.S.C. § 636(b)(1).  All other review is for plain error.  *Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).  The Court addresses the parties' objections in detail below.

## II.     Factual Background

### A.     Board Denial of Release to Mandatory Supervision

As required by the Texas Government Code, the Board provided written reasons for each of its denials of Rosa's release to mandatory supervision. TEX. GOV'T CODE ANN. § 508.149(c).  In addition to the two reasons tracking the statutory text—"the record indicates that the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation"; and "the record indicates that the inmate's release would endanger the public"—each justification also contained an additional reason:

---

[5] Although only Rosa's June 21, 2010 filing was explicitly labeled as containing his objections, his subsequent filings also contained responses to and criticisms of the Magistrate Judge's report.  Although only Rosa's June 21, 2010 objections were timely filed, the Court has nevertheless considered all of Rosa's filings to date.

> The record indicates that the inmate committed one or more violent criminal acts indicating a conscious disregard for the lives, safety, or property of others; or the instant offense or pattern of criminal activity has elements of brutality, violence, or conscious selection of victim's vulnerability such that the inmate poses an undue threat to the public; or the record indicates use of a weapon.

Petitioner's Memorandum of Law [#2], Ex. G. Additionally, Rosa's October 10, 2007 written denial contained the reason: "The record indicates that length of time served by the inmate is not congruent with offense severity and criminal history." *Id.*

## B.      Rosa's Conviction

As noted above, Rosa was convicted of engaging in organized criminal activity (aggravated assault). Texas Penal Code § 71.02, "Engaging in Organized Criminal Activity," provides: "A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit," one of a variety of offenses, including aggravated assault. Tex. Pen. Code Ann. § 71.02(a).

Documents relating to Rosa's judgment and sentence provided additional background on his offense.[6] Thaler's Response [#14], Ex. A. Specifically, the "Stipulation of Evidence" in Rosa's plea agreement, which Rosa signed and admitted was true, stated he was involved in a criminal street gang; he and others conspired to commit the offense of assault; and he, acting with the others, intentionally punched, kicked, and beat his victim, Christopher Guillen, about the body. *Id.* at 10. Count one of the indictment, which was dismissed pursuant to Rosa's plea agreement and which

---

[6] Rosa does not appear to dispute the accuracy of the documents provided by Thaler. Rather, Rosa contends the Board did not have a valid copy of the documents when it made its decisions denying his release to mandatory supervision. *See* Rosa's Reply to Thaler's Response [#17] at 2–3.

Rosa apparently denies, further alleged Rosa acted with the others to kidnap and murder Guillen by shooting him in the head.[7]  *Id.* at 5.

Rosa further provided another document relating to his offense, apparently from Texas Department of Criminal Justice ("TDCJ"), which contained the following "Present Offense Summary":

> The current offense of ENGAGE IN ORGAN CRIM ACT (AGG ASLT) occurred on 03/03/2001 in San Marcos, Texas. The subject participated in the fatal shooting of Christopher Joseph GUILLEN. The subject and 3 codefendants (whose names or ID's the subject cannot or will not disclose) beat the adult Hispanic male w/fists, shot him twice in the head w/9 millimeter pistol and 2 times in abdomen w/same pistol. The subjects then dumped the victim's body near I-35. The victim was a MEMBER of the LATIN KINGS. The subject, a Regional ofcr for the Central TX LATIN KINGS, assisted in the MURDER, by acting as a lookout. The subject was arrested by city police in Andover, MA on 07/26/2001 and trans to the Hays County, TX, where he was held w/out bond.

Petitioner's Memorandum [#2], Ex. B.  This summary is central to Rosa's claims: Rosa's objections stated, "[i]t is the officially recognized summary of the offense which is at issue, not the document per se."  Rosa's Objections [#22] at 3.  Rosa claimed prison officials asked him about a murder during 2004, 2005, and 2006 parole hearings.  Petitioner's Memorandum [#2], Ex. H at ¶¶ 1–3. From this, Rosa apparently concluded the Board used the alleged murder against him during decisions on release to mandatory supervision.  *See* Rosa's Objections [#22] at 3 ("It would be disingenious [sic] that there could be diffe[r]ent versions of Rosa's offense contained within various departments of T.D.C.J. and the Board.").

---

[7] In a statement made under penalty of perjury, Rosa stated he was asked by prison officials at various times about a murder, but "that [he] knew nothing about any murder."  Rosa's Supplement [#2], Ex. H at ¶ 2.

**Analysis**

I.      **Procedural Challenges to Rosa's Application**

Thaler challenges Rosa's application on two grounds.  First, Thaler argues Rosa's claims are time-barred.  Second, Thaler claims Rosa has failed to exhaust his state court remedies.  With respect to Rosa's claims from 2006, 2007, and 2008, the Court agrees they are time-barred.  With respect to Rosa's 2007, 2008, and 2009 challenges, the Court finds Rosa has failed to exhaust his state court remedies.

A.      **Time-Barred Claims**

The AEDPA prescribes a 1-year limitations period for claims filed by those in custody pursuant to a State court judgment.  28 U.S.C. § 2244(d)(1).  This period begins to run on the latest of: (1) the date the judgment became final; (2) the date on which any impediment to filing was removed; (3) the date on which the constitutional right was first recognized by the Supreme Court; and (4) the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence.  *Id.*

Here, the relevant dates are the dates of the Board's decisions, as they are the dates on which the factual predicates for Rosa's claims could have been discovered.  Rosa's petition was filemarked on February 22, 2010; however, as the Magistrate Judge noted, it was dated and apparently delivered to prison personnel on February 16, 2010.  The Court agrees with the Magistrate Judge's conclusion Rosa's claims for Board decisions prior to February 16, 2009, are time-barred.  Nor, indeed, did Rosa object to this portion of the Magistrate Judge's report.

Although this limitations period is subject to equitable tolling, that doctrine "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is

prevented in some extraordinary way from asserting his rights." *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996).  Rosa made no such allegations and did not object to the Magistrate Judge's report on this issue; the Court agrees equitable tolling is inappropriate in this case.

Nor is Rosa entitled to statutory tolling.  Although Rosa apparently filed a document that purported to support a state habeas application, there is no evidence Rosa actually filed a valid state habeas application.  Texas state courts require petitioners to file applications for habeas corpus relief on appropriate forms; there is no indication in the record Rosa met this requirement.

Consequently, the Court finds Rosa's challenges to the Board's denials in 2006, 2007, and 2008 are time-barred.

**B.      Failure to Exhaust State Administrative Remedies**

As noted above, 28 U.S.C. § 2254(b)(1) generally requires a person in custody pursuant to a State court judgment to exhaust his or her State remedies before filing a federal application for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A).  This requirement is waived if the applicant can demonstrate there is an absence of available State corrective process, or circumstances exist that render the process ineffective to protect the rights of the applicant.  *Id.* § 2254(b)(1)(B).

Rosa first argued his failure to seek review of the Board's decisions was because Texas Government Code § 508.149(d), which states a Board's decision not to release an inmate to mandatory supervision "is not subject to administrative or judicial review," meant such decisions could not be challenged via an application for state habeas relief.  However, the Texas Court of Criminal Appeals has specifically held to the contrary, concluding an "applicant can mount a due process challenge to the procedures used by the parole board in considering whether to release

-8-

applicant to mandatory supervision." *Ex parte Geiken*, 28 S.W.3d 553, 557 (Tex. Crim. App. 2000). Therefore, the Court rejects Rosa's argument on this point.

Second, Rosa argued he did attempt to exhaust his state court remedies in 2006. According to letters provided by Thaler in his response, which letters purported to be from Rosa to the Hays County District Clerk's Office, Rosa attempted to file a petition for state habeas relief in either November or December of 2006. Thaler's Response [#14], Ex. A at 13, 16. In his second letter, dated February 25, 2007, Rosa stated he had confirmation his state habeas application had been received by the Clerk's Office, but had received no confirmation it had been filed. *Id.* at 13. He further stated the District Clerk had thirty-five days in which to forward the application to the Court of Criminal Appeals. *Id.*

Under the circumstances, and especially taking note of the Magistrate Judge's observations regarding Hays County, R&R at 6, the Court finds it plausible Rosa attempted to exhaust his state court remedies with respect to his 2006 claim. Rosa's letters demonstrated a fairly detailed understanding of state habeas application procedures, however; it is implausible Rosa genuinely believed his state habeas application had been filed or was being considered by the Texas Court of Criminal Appeals.

Therefore, the Court finds Rosa failed to exhaust his state court remedies with respect to any of his challenges.[8]

---

[8] Thaler objected to the Magistrate Judge's report "to the extent that it recommend[ed] that Rosa [had] exhausted available state remedies or that it would [have been] futile to exhaust state remedies." Thaler's Objections [#23] at 2. The Court is not sure the Magistrate Judge's report actually made either recommendation, but the Court notes Thaler's objection. The Court further notes its decision today is not in conflict with Thaler's objections.

**C.** **Conclusion — Procedural Challenges**

The Court DISMISSES WITH PREJUDICE as time-barred Rosa's 2006, 2007, and 2008 challenges. The Court DISMISSES WITHOUT PREJUDICE all of Rosa's challenges for failure to exhaust his state court remedies.

**II.** **Substantive Challenges to Rosa's Application**

In the alternative, the Court finds Rosa's application lacks merit and denies it.

**A.** **Equal Protection Claim**

The Court agrees with the Magistrate Judge's analysis and his conclusion Rosa has failed to state an equal protection claim. "[A] party who wishes to make out an Equal Protection claim must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (quotation omitted). "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992).

Here, Rosa has not identified a specific group to which he belongs, much less provided evidence the Board denied his release to mandatory supervision because he was part of such a group. Absent evidence of these two elements—a cognizable group and discrimination by the Board motivated by Rosa's membership in that group—Rosa's equal protection claim fails. The Court therefore DENIES Rosa's application on this issue.

**B.** **Due Process Claim**

The Magistrate Judge considered Rosa's due process claims under a traditional, procedural due process analysis. In his objections, Rosa argued the Magistrate Judge erred because Rosa's

claims were in fact based on a violation of his substantive due process rights.  Rosa's Objections [#22] at 1.  Under either analysis, however, Rosa's claims lack merit.

## 1.      Substantive Due Process

### a.      Rosa's Claims Are Not Amenable To Substantive Due Process Analysis

The Court finds Rosa has failed to state a valid substantive due process claim.  Indeed, the act of articulating his argument demonstrates its fatal flaw.  Rosa is attempting to raise a *substantive* due process challenge to the *procedures* employed by the Board in denying his release to mandatory supervision.  However, the substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).  Rosa does not argue the Board cannot deny release to mandatory supervision regardless of the fairness of the procedure.  Rather, the heart of Rosa's claim is precisely that the Board did not employ fair procedures in reaching its decisions: it relied on false, unadjudicated offenses; it used arbitrary and capricious methods; and it provided no access to his file or means of correcting erroneous information contained within it.  Although Rosa's argument is novel, the Court nevertheless concludes Rosa's claim—which, fairly considered, challenges the procedure used by the Board in deciding not to release him to mandatory supervision—is not cognizable under substantive due process analysis.

This conclusion is buttressed by Supreme Court precedent.  The Supreme Court noted it "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992).  Indeed, the "mere novelty" of a claim, standing

-11-

alone, is "reason enough to doubt that 'substantive due process' sustains it." *Reno v. Flores*, 507 U.S. 292, 303 (1993).  This Court declines to rush in where the Supreme Court fears to tread.

**b.      Rosa's Substantive Due Process Claim Lacks Merit**

Even if Rosa's claim is amenable to substantive due process analysis, it fails.  In analyzing a substantive due process claim, a court must "focus on the allegations in the [application] to determine how petitioner describes the constitutional right at stake and what the [respondent] allegedly did to deprive [petitioner] of that right." *Collins*, 503 U.S. at 125.

Rosa's petition lists three grounds for relief.  Verbatim, they are:

(1) "The Texas Board of Pardons & Parole has violated Petitioner's due process rights under the 5th & 14th Amendments USCA for denying mandatory supervision release, based upon unadjudicated allegations secretly inserted into the parole file";

(2) "The Texas Board of Pardon & Parole has violated Petitioner's constitutional right to Due Process and Equal Protection under the law by imposing arbitrary state action to deny mandatory supervision release"; and

(3) "The Texas Board of Pardons & Parole has violated Petitioner's due process rights under the 5th and 14th Amendments USCA for failing to provide a forum whereby a mandatory supervision candidate may be allowed to contest erroneous information contained within a parole file."

Petition [#1] at 7.  As further explanation of his second ground for relief, Rosa stated the Board was "allowed to arbitrarily deny release of a mandatory supervision candidate without a physical hearing or forum that might allow the candidate to present evidence in his favor." *Id.* at 11.  Similarly, Rosa expanded on his third ground for relief, stating "there is no forum for the Petitioner . . . to present [himself] to the Board of Pardons and Parole; nor to address allegations that may be contained in the parole file." *Id.* at 13.  He also noted there was "no state remedy nor administrative remedy for arbitrary denial of release on mandatory supervision." *Id.*

The Court has difficulty "articulating the constitutional right at stake" in Rosa's petition without mentioning the fairness of the Board's procedure—which would, of course, implicate procedural due process rights.  The Court reads Rosa's petition as alleging the Board violated his substantive due process rights by considering false information within his file, regardless of the process employed.  Having articulated that purported right, the Court concludes Rosa has failed to state a substantive due process claim.

Under Texas law, "[t]he two statutory findings that justify non-release [to mandatory supervision] are predictive judgments based upon discrete factual conclusions and subjective appraisals."  *Ex parte Retzlaff*, 135 S.W.3d 45, 49 (Tex. Crim. App. 2004).  As the *Retzlaff* court noted, the "due process goal in any parole board review is to 'minimize the risk of erroneous decisions.'"  *Id.* (quoting *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 13 (1979)).  At the risk of beating a dead horse, this Court notes both the Supreme Court and the Texas Court of Criminal Appeals have recognized it is the existence of a fair *process* that minimizes the chance of an erroneous decision.  *Greenholtz*, 442 U.S. at 13; *Retzlaff*, 135 S.W.3d at 49.  The Texas Court of Criminal Appeals has stated: "Timely notice to the inmate that he will be reviewed for mandatory release gives him the opportunity to provide written input, marshal evidence of his custodial behavior, clarify adverse material in his file, provide letters, references, and information concerning possible employment or housing."  *Retzlaff*, 135 S.W.3d at 49.

Here, Rosa complains the Board relied on erroneous information in Rosa's file concerning his alleged involvement in a murder.  The Court rejects Rosa's claim for three reasons.

-13-

i.    **Rosa's Purported Right Is Not Protected Under Substantive Due Process**

First, any broad incarnation of the right espoused by Rosa would be unworkable.  As noted above, the Board's role is to make "predictive judgments based upon discrete factual conclusions and subjective appraisals." *Id.*  This role clearly includes weighing conflicting evidence and making credibility determinations and, like any predictive exercise, requires some degree of educated guesswork.  To allow an inmate to raise a constitutional challenge every time the Board resolved a factual dispute against the inmate would be to deprive the Board of its function and turn this Court into a second fact-finder.  Deference to the Board's determinations is mandated by Texas law, TEX. GOV'T CODE ANN. § 508.149(d), recognized by Texas case law, *Ex parte Geiken*, 28 S.W.3d 553, 560 (Tex. Crim. App. 2000), and consistent with the United States Supreme Court's holding that due process does not require a parole board to provide specific evidentiary support for its decisions, *Greenholtz*, 442 U.S. at 15.  A constitutional right requiring the Board rely only on undisputed information is not only inconsistent with this deference, but also inconsistent with the Supreme Court's unequivocal position: "[T]here simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations." *Id.* at 7. Because it is inconsistent with the Board's function, with proper deference to the Board's determinations, and with Supreme Court precedent, the Court finds Rosa's purported right is not protected by the substantive component of the Due Process Clause; it therefore denies his claim.

ii.   **Any Consideration of Dismissed Charges Was Not Improper**

The second reason the Court denies Rosa's claim is because Rosa presumably could have (and, indeed, seems to have) given the same information to the Board as he gave to this Court—namely, that he was not convicted of the offense of murder and denied any involvement in

such an offense.  Rosa did not allege he had no opportunity to dispute the evidence against him as to either its weight or its accuracy.  That Rosa may not have offered such evidence, or that the Board may not have believed Rosa, is insufficient to constitute a violation of Rosa's substantive due process rights.

In his report, the Magistrate Judge noted when a parole board reaches a decision on release, it is not bound by strict rules of evidence, *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 364 (1998), it can consider dismissed charges, *Else v. Johnson*, 104 F.3d 82, 83 (5th Cir. 1997), and it "has the right to consider any evidence that existed at the time of sentencing, including that of more serious counts which were dismissed pursuant to a plea bargain."  *Page v. United States Parole Comm'n*, 651 F.2d 1083, 1086 (5th Cir. 1981).  Therefore, the Magistrate Judge concluded, Rosa had failed to demonstrate that reliance by the Board on an unadjudicated offense was improper. R&R at 11.

Rosa objected to this conclusion.  Rather than addressing the cases cited in the Magistrate Judge's report, however, he argued Texas Penal Code § 12.01 and Texas Code of Criminal Procedure article 42.01 § 1 created a liberty interest in not having release denied "based on information not contained in [an] official judgment."[9]  Rosa's Objections [#22] at 7.  Rosa cited no law in support of this statement.  Indeed, he stated, "[i]t is not necessary for the Petitioner to cite case law to support a substantive claim of due process violations because the due process clause of the

---

[9] Texas Penal Code § 12.01(a) merely states: "A person adjudged guilty of an offense under this code shall be punished in accordance with this chapter and the Code of Criminal Procedure." Tex. Pen. Code Ann. § 12.01(a). Texas Code of Criminal Procedure article 42.01 § 1 simply defines what a judgment is, and dictates what a judgment must contain. Tex. Code Crim. Proc. Ann. art 42.01 § 1.

5th and 14th Amendments U.S.C.A. are authority enough." With due respect to those Amendments and the authority inherent within them, the Court disagrees.

Rosa's argument appears to be explicitly refuted by the cases cited by the Magistrate Judge and recited above. Moreover, the statutes Rosa cited do not appear relevant to the question of release to mandatory supervision. Rosa stated in his argument, "[t]he only cognizable sentence is the one imposed by the judge." Rosa's Objections [#22] at 5. Rosa pled guilty on March 17, 2004, and was sentenced to twelve years imprisonment. His imprisonment is, therefore, well within the sentence imposed by the judge. Simply because Rosa has a protected liberty interest in release to mandatory supervision does not mean any denial of such release is a constitutional violation. Nor does it mean a determination whether to release him cannot be based on evidence beyond the judgment. The Court therefore rejects Rosa's claim.

### iii.    Rosa Has Failed to Show the Board Based Its Denials On his Dismissed Murder Charge

The final problem with Rosa's claim is, even if the Court assumes both: (1) Rosa had nothing to do with the murder of Christopher Guillen; and (2) reliance on the present offense summary would have been improper, Rosa has failed to demonstrate the Board actually relied on the present offense summary in reaching its decision to deny him release to mandatory supervision. The Magistrate Judge noted correctly there was no conclusive evidence the Board considered the summary in reaching its 2006, 2007, 2008, or 2009 decisions to deny release. R&R at 11. Rosa hotly contested this in his objections, arguing he provided an affidavit in which he testified "he was questioned by parole agents about what was contained in [his] parole file," including allegations about a murder. Rosa's Objections [#22] at 3. Rosa argued it would be implausible to suppose the Office of the Inspector General had access to information that was unavailable to the Board.

-16-

The Court finds this point debatable, but is willing to concede it for the purpose of advancing Rosa's argument.  Even if the Court assumes the Board had access to the present summary offense, and further assumes the summary is false and it would not have been proper to consider it, Rosa's claim fails.  As the Texas statute makes clear, the only two findings necessary to deny Rosa's release to mandatory supervision were: (1) his accrued good conduct time was not an accurate reflection of his potential for rehabilitation; and (2) his release would endanger the public.  TEX. GOV'T CODE ANN. § 508.149(b).  Although the Board's written denials reflected it made these findings, nowhere did the denials mention Rosa's dismissed murder charge.  *See* Petitioner's Memorandum of Law [#2], Ex. G.   In all of its written denials, the Board also made a third finding, that Rosa committed one or more violent criminal acts indicating a conscious disregard for the lives, safety, or property of others; or his offense or pattern of criminal activity had elements of brutality, violence, or conscious selection of Christopher Guillen's vulnerability such that Rosa posed an undue threat to the public; or the record indicated use of a weapon.  *Id.*  Again, Rosa's dismissed murder charge was not listed as a reason for denial.

Despite Rosa's evidence he had completed the requirements of his Individual Treatment Program, *see* Petitioner's Memorandum of Law [#2], Ex. C, there is no evidence the Board relied on any murder allegations in deciding Rosa's accrued good conduct time was not an accurate reflection of his potential for rehabilitation.  Even in the universe of determinations not amenable to judicial review, this determination stands out as being especially unsuitable for second-guessing by this Court.

Moreover, the second and third findings relating to, among other things, Rosa's dangerousness, brutality, and conscious disregard for the lives or safety of others, seem perfectly

consistent with the "Stipulation of Evidence" in Rosa's plea agreement.  Thaler's Response [#14], Ex. A at 10.  Apart from any allegations of his involvement in Christopher Guillen's murder, Rosa admitted he was involved in a criminal street gang; he conspired to assault Guillen; and he and others intentionally punched, kicked, and beat Guillen.  No deference to the Board's determination is necessary for this Court to conclude it is consistent with the undisputed evidence.[10]

## iv.    Rosa's Additional Objections

One of Rosa's long-standing objections, asserted first on April 28, 2010, was that the Director of the Texas Department of Criminal Justice was "holding [him] without a valid copy of the judgment and sentence documenting a conviction, in violation of the Texas Government Code § 508.152(a)."  Petitioner's Request [#13] at 1.  In support of his claim, Rosa pointed to a document provided by Thaler as part of his motion to dismiss that read, in part: "The Director does not have a copy of the judgment and sentence documenting Rosa's conviction in cause number CR-01-543."

---

[10] On December 27, 2010, Rosa filed a document entitled "New Evidence Recently Obtained in Favor of Habeas Relief" ("New Evidence") [#28].  Attached to this document, Rosa attached a letter purporting to be from Troy Fox, Administrator for the Board. New Evidence [#28] at 5–6.  This letter recited the reasons for the Board's decision not to release Rosa to mandatory supervision (the same as those recited above in the body of this Order), and contained the following statement:

> You are incarcerated on a 12 year sentence you received for Engaging in Organized Criminal Activity-Aggravated Assault, which was count II of your original indictment. Court documents you signed indicate you pled guilty in a plea bargain arrangement in exchange for dismissal of Count I for Capital Murder. The victim of your offense was beaten by a group of individuals shortly before being shot execution style and left beside a road outside the metropolitan area of San Antonio. It appears that the decision rendered by the board panel is supported by this information.

*Id.* at 5.  Rosa argued this statement "clearly show[ed] that . . . the Parole board relied on [this information] to deny his release to mandatory supervision in violation of petitioner's due process rights."  *Id.* at 2.

However, the statement does not support Rosa's argument for two reasons.  First, Mr. Fox's observation the board panel's decision "appear[ed]" to be supported by the evidence suggests Mr. Fox was not himself involved in the decision to deny Rosa's release.  Therefore, Mr. Fox's statement appears to be his own after-the-fact opinion.  Second, Mr. Fox did not indicate Rosa was personally involved in the murder; and even if he had, the Court has already concluded consideration of a dismissed offense—even one Rosa disputed—would not have violated Rosa's due process rights.  The Court therefore rejects this argument.

Thaler's Motion to Dismiss [#9], Ex. A at 3.  The document went on to explain the abbreviations contained within the computer generated commitment inquiry attached to the motion.  *Id.*

The statute cited by Rosa states: "Not later than the 120th day after the date an inmate is admitted to the institutional division, the department shall obtain all pertinent information relating to the inmate, including," among other things, the judgment and sentence.  Tex. Gov't Code Ann. § 508.152(a).  The Magistrate Judge interpreted the statement in the document to mean the Attorney General's office did not have a copy of the judgment and sentence at the time it filed the motion to dismiss.  R&R at 4 n.1.  The Magistrate Judge further noted its conclusion was supported by the fact a full copy of the judgment and sentence was included in Thaler's May 14, 2010 response to Rosa's petition.  *Id.*

Rosa objected to the Magistrate Judge's conclusion, arguing it was "contrary to what the document actually state[d]."  Rosa's Objections [#22] at 5.  Rosa further argued there was "nothing in [the] wording to suggest that the Director actually had a copy and had simply failed to deliver a copy to the Texas Attorney General."  *Id.*  With respect to the inclusion of the full judgment and sentence in Thaler's response, Rosa argued it was "equally likely that neither the Board nor the Director possessed a valid copy until the moment the Texas Attorney General went and fetched it from the clerk of Hayes [sic] County, Texas."  *Id.* at 5–6.

The Court rejects Rosa's argument and agrees with the Magistrate Judge's conclusion the statement is amenable to an "innocent" interpretation.  While the statement could be interpreted to mean the Director had no copy because the Texas Department of Criminal Justice had no copy, it could also be interpreted in other ways.  For instance, it could mean exactly what the Magistrate Judge concluded it meant; or it could mean the Director did not have the full judgment and sentence

immediately available.  Because the computer generated summary was merely used to show Rosa's guilty plea, offense of conviction, and length of sentence, the Attorney General's office, or the Director, may have felt inclusion of the full judgment and sentence was unnecessary.  Because the information in the summary seems to have accurately summarized the details of Rosa's conviction, and it is unclear where the information came from if not the judgment and sentence, the Court rejects Rosa's interpretation of the statement.  A single ambiguous statement is simply insufficient to plausibly suggest the Board acted unconstitutionally.[11]

v.      **Conclusion**

For the foregoing reasons, the Court concludes: (1) Rosa has failed to identify a right protected by the substantive component of the Due Process Clause; (2) because Rosa was afforded a meaningful opportunity to provide contrary evidence, any consideration by the Board of his dismissed murder offense would not have been improper; and (3) Rosa failed to show the Board actually based its denials on his dismissed murder charge.

c.      **Summary — Substantive Due Process**

The Court finds Rosa's claim is procedural, not substantive, and therefore is not an appropriate claim under the substantive component of the Due Process Clause.  In the alternative, the Court finds Rosa's substantive due process claim lacks merit.  The Court therefore DENIES Rosa's claim for relief on this issue.

---

[11] The Court also notes the statement did not directly support Rosa's claim of a violation of Texas Government Code § 508.152(a).  That section requires "the department shall obtain" a copy of the judgment within 120 days, TEX. GOV'T CODE § 508.152(a), whereas the statement indicated the "Director [did] not have" a copy, Thaler's Motion to Dismiss [#9], Ex. A at 3.  The statement neither implicated the responsible party—the department—nor the relevant duty—having obtained a copy within 120 days.  Moreover, "even if an action by a government entity violates its own rules or those of the state, there is no *constitutional* deprivation unless the conduct also trespasses on federal constitutional safeguards."  *Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir. 1988).  Rosa has not provided any case law indicating a violation of this section rises to the level of a constitutional deprivation.

2.    **Procedural Due Process**

The Court agrees with the Magistrate Judge's analysis and conclusion the Board's mandatory supervision review procedure comported with the requirements of procedural due process. As noted above, Rosa did not disagree with the Magistrate Judge's procedural due process analysis, but objected because the Magistrate Judge applied procedural due process analysis to his substantive due process claim. Therefore, the Court finds Rosa has either abandoned his procedural due process claim, or does not oppose the Magistrate Judge's analysis of it. Because Rosa failed to object, and because the Magistrate Judge's analysis is not plainly erroneous, the Court DENIES Rosa's petition on this issue.

Moreover, the Court agrees with the Magistrate Judge's conclusion Rosa's claim lacks merit. The Magistrate Judge's report contains a succinct and accurate summary:

> Rosa's due process protections afford him only notice, the opportunity to submit evidence to the parole board in support of his release, an explanation as to the reasons for the denial of release and notification of his next review date. As he does not contend he did not receive these protections, it appears Petitioner was afforded all the process he was due.

R&R at 12. Again, Rosa did not object to this summary. Rosa's application is therefore DENIED to the extent he continues to seek relief on a procedural due process claim.

C.    **Conclusion — Substantive Challenges**

Because Rosa failed to identify a cognizable group to which he belonged, nor provided evidence the Board denied his release to mandatory supervision because of his membership in that group, the Court DENIES relief on his equal protection claim.

Rosa appears to have been provided all the procedural protections required by the Due Process Clause: notification, meaningful opportunities to submit evidence, explanations for his denials, and notification of his next review dates.  Further, Rosa did not object to the Magistrate Judge's report and recommendation on procedural due process grounds.  The Court therefore DENIES relief on Rosa's procedural due process claim, to the extent he is asserting one.

Finally, Rosa's claim is not amenable to substantive due process review.  In the alternative, his substantive due process claim lacks merit because it does not identify a protected right, nor does it demonstrate how that right was improperly abridged.  The Court therefore DENIES Rosa's application on this issue.

## Conclusion

Rosa's 2006, 2007, and 2008 claims are time-barred.  He failed to exhaust his administrative remedies with respect to his 2006, 2007, 2008, and 2009 claims.  The Court dismisses all of Rosa's claims based on these procedural defects.

In the alternative, for the foregoing reasons, Rosa's equal protection claim, procedural due process claim, and substantive due process claim lack merit.  The Court therefore denies the claims on this alternative basis.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000).  In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Rosa's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, a certificate of appealability shall not be issued.

Accordingly,

IT IS ORDERED THAT the Report and Recommendation of the Magistrate Judge [#20] is ACCEPTED;

IT IS FURTHER ORDERED THAT Petitioner Alexy Agusto Rosa's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 [#1] is DISMISSED WITHOUT PREJUDICE for failure to exhaust state court remedies;

IT IS FURTHER ORDERED THAT Petitioner Alexy Agusto Rosa's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 [#1] is DISMISSED WITH PREJUDICE as time-barred with respect to his 2006, 2007, and 2008 challenges;

IT IS FURTHER ORDERED THAT Petitioner Alexy Agusto Rosa's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 [#1] is alternatively DENIED;

IT IS FINALLY ORDERED THAT all pending motions are DISMISSED as moot.

SIGNED this the 31st day of January 2011.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE